UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVELYN DELGADO,<br><br>　　　　　　Plaintiff,<br>v.<br><br>MICHAEL J. ASTRUE, Commissioner,<br>Social Security Administration,<br><br>　　　　　　Defendant. | Civil No. 06cv2063 L (NLS)<br><br>**REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 13, 15] |

Evelyn Delgado (Plaintiff or Delgado) brings this action under the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's (Defendant or Commissioner) final decision denying her claim for disability insurance benefits. This case was referred for a report and recommendation on the parties' cross motions for summary judgment. *See* 28 U.S.C. § 636(b)(1)(B). After considering the moving papers, the administrative record and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for reversal and/or remand [Doc. No. 13] be **DENIED** and that Defendant's cross motion for summary judgment [Doc. No. 15] be **GRANTED**.

## PROCEDURAL HISTORY

Delgado filed an application for Disability Insurance Benefits and Supplemental Security Income on October 21, 2004, alleging disability due to a partial tear of the right rotator cuff, degenerative disc disease of the cervical spine, bilateral knee problems and hepatitis C. (Administrative

Record (AR) at 55-57; 68; 105; 240-242.)  She initially alleged onset of disability on February 24, 2004, but then amended the alleged onset date to May 27, 2005, her fiftieth birthday.  (AR at 12; 271.)  The Commissioner denied her application for benefits at both the initial and reconsideration levels.  (AR at 22-26, 29-33, 244-248, 250-254.)  An Administrative Law Judge (ALJ) held a hearing on March 28, 2006.  (AR at 257.)  Delgado and her non-attorney representative, Jeannette Peat, attended the hearing.  (AR at 257.)  Based on the testimony and documentary evidence, on May 18, 2006 the ALJ issued a decision denying Delgado's application for benefits. (AR at 12-19.)  Delgado filed an administrative appeal, but the Appeals Counsel declined to review the ALJ's decision. (AR at 407.)  Delgado then filed this action under 42 U.S.C. § 405(g).

## RELEVANT FACTS

**Background.**

Delgado was born on May 27, 1955.  (AR at 55.)  She attended school through the tenth grade.  (AR at 73-74.)  From 1992 to March 2004, she worked as a bus driver, which included working the lift, dispatching and training others to drive.  (AR at 69-70.)  Delgado alleges her injuries first started to bother her on September 29, 2003, and that they caused her to stop working by March 2004.  (AR at 105.)

**The Knee and Elbow Pain.**

Delgado went to the emergency room on February 25, 2004 complaining of knee pain.  (AR at 135-137.)  The doctor assessed that she suffered from bilateral knee pain, probably due to overuse.  (AR at 136.)  From February 27 to April 9, 2004, Delgado reported to Aragon Medical Center elbow pain and trouble walking due to the knee pain.  (AR at 138-144.)  The Aragon doctor prescribed her medication, modified duties and physical therapy.  (AR at 144.)

On May 11, 2004, Delgado saw an orthopedic surgeon, Dr. Brodie.  (AR at 174-180.)  Dr. Brodie reported that Delgado's bilateral knees were stable to clinical testing, she had mild crepitations beneath her kneecaps and her reflexes were brisk and symmetrical.  (AR at 177-178.)  In an MRI taken July 29, 2004, a radiologist found that Delgado had a ganglion cyst on her left knee.  (AR at 219-211.)  On her right knee, the radiologist found a horizontal tear of the outer half of her meniscus.  (AR at 222-224.)

**The Shoulder.**

Delgado had an MRI taken of her right shoulder on July 29, 2004 that revealed she had at least a partial tear in a tendon. (AR at 216-218.)

**The Spine.**

In an MRI of the cervical spine taken July 29, 2004, the radiologist found that Delgado suffered from disc desiccation and degenerative disc disease. (AR at 212-215.) He also found that she has a central disc bulge at three levels that produce mild spinal canal narrowing. (AR at 212-215.)

**Dr. Gattu's Cumulative Report.**

Dr. Gattu of Kaiser Permanente treated Delgado and assessed her functional capacity on July 20, 2004. (AR at 229-230.) Dr. Gattu found that Delgado had joint pain and overuse syndrome. (AR at 229-230.) The doctor opined that Delgado was temporarily totally disabled from May 28 to June 10, 2004. (AR at 230.)

**Dr. Nissanoff's Cumulative Report.**

The Department of Social Services Disability Unit sent Delgado to Dr. Nissanoff for a comprehensive orthopedic evaluation. (AR at 156.) Dr. Nissanoff examined Delgado on December 9, 2004 for complaints of neck, shoulder, wrist and knee pain. (AR at 156-160.) The doctor found a normal range of motion in the complained-of areas. (AR at 158-159.) He assessed that Delgado could stand and walk or sit for eight hours during the work day with the appropriate rest breaks, and that she could lift 20 pounds occasionally or frequently. (AR at 159-160.)

**Dr. Wieseltier's Cumulative Report.**

On March 24, 2005 Delgado went to Dr. Wieseltier, the Agreed Medical Examiner, to evaluate her complaints of pain in her right shoulder, right wrist, hand and knees. (AR at 194-211.) Based on his exam and a review of her relevant past medical evaluations, Dr. Wieseltier found that she had tenderness and mild atrophy to her right shoulder so that she should not perform repetitive overhead work or forceful pushing or pulling activities. (AR at 207-208.) He concluded that based on Delgado's stated job description, she should be capable of performing her usual and customary duties. (AR at 208.)

/ / /

/ / /

### THE ALJ HEARING AND DECISION

**Delgado's Testimony.**

At the hearing, Delgado testified that she stopped working because she injured her shoulder and knees. (AR at 263.) She reported neck and shoulder problems to her employer. (AR at 263.) She went to her employer's doctor who recommended physical therapy and seeing an orthopedist. (AR at 263.) She saw an orthopedist through her own insurer, and then saw one through her employer's doctor to examine her shoulder and knees. (AR at 263-264.) When the ALJ asked her why she could not do a sedentary job, Delgado said that she could not sit in one place for too long because of pain to her back and shoulder. (AR at 266-267.) She also feels fatigue from hepatitis and sometimes cannot get up. (AR at 268.)

Delgado testified that she does not do much physically because she cannot lift up, push or pull. (AR at 267.) She can clean the house, but needs to relax about every thirty minutes, and can only clean one room a day as opposed to the whole house in a day. (AR at 269-270.) She goes grocery shopping, but normally asks a neighborhood kid to bring the groceries inside for her. (AR at 267.) She can walk for a limit of about five blocks. (AR at 267.) She cannot drive for more than two hours at a time. (AR at 268.) She feels that she is in a no-win situation because she has to constantly rearrange positions due to discomfort, and that by the time bedtime comes, she is aching all over. (AR at 270.) She must go to sleep with the pain and without taking any anti-inflammatories or pain medication because they irritate her liver. (AR at 270.)

When asked if she has looked for jobs since 2004, Delgado responded that she tried but could not find one because what she knows how to do–*e.g.* drive–she can no longer do as a job. (AR at 268.)

The ALJ requested seeing the rest of her medical records before issuing a decision. (AR at 270-271.)

**The Written Decision.**

The ALJ issued a written opinion denying Delgado's claim for benefits. (AR at 12-19.) He first concluded that Delgado has not engaged in substantial gainful activity since her May 27, 2005 amended alleged onset of disability. (AR at 14.) Citing the medical reports, he found that Delgado suffered from the severe impairments of a partial tear of the right rotator cuff and degenerative disc disease of the

cervical spine, but no other severe impairments. (AR at 14-15.) The ALJ found that Delgado did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the Code of Federal Regulations. (AR at 16.)

Citing again to the medical reports, the ALJ found that although Delgado could not perform any of her past relevant work as a bus driver, she retained "the residual functional capacity to lift/carry 10 pounds frequently, lift/carry 20 pounds occasionally, stand and walk six hours per eight-hour day, sit six hours per eight-hour day, and should not perform overhead reaching with her right arm." (AR at 16-18.) The ALJ concluded that considering Delgado's age, education, work experience and residual functional capacity, a significant number of jobs exist within the national economy that she can perform, and that she has not been under a "disability" as defined in the Social Security Act (SSA) from the date of her amended alleged onset of disability. (AR at 18.)

## DISCUSSION

Delgado argues that the ALJ's decision is not based on substantial evidence and arbitrarily determined she was not disabled, and that the ALJ should have further developed the record.

**Evaluating Social Security Disability Claims.**

To qualify for disability benefits under the SSA, an applicant must show that he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months. 42 U.S.C. §423(d). The Social Security regulations establish a five-step sequential evaluation for determining whether an applicant is disabled under this standard. 20 C.F.R. § 404.1520(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

First, the ALJ must determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If not, then the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairment is severe, the ALJ must then determine whether it meets or equals one of the "Listing of Impairments" in the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the applicant's impairment meets or equals a Listing, he or she must be found disabled. *Id.* If the impairment does not meet or equal a Listing, the ALJ must then determine whether the applicant retains the residual

functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the applicant cannot perform past relevant work, the ALJ–at step five–must consider whether the applicant can perform any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

**Substantial Evidence.**

The SSA provides for judicial review of a final agency decision denying a claim for disability benefits. 42 U.S.C. § 405(g). A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards. *Id., Batson*, 359 F.3d at 1193. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). When the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld. *Batson*, 259 F.3d at 1193. Where, as here, the Appeals Council denies a request for review, the ALJ's decision becomes the final agency decision that the court reviews. *Id.* at 1193 n.1.

Here, Delgado summarily challenges the ALJ's denial of benefits by arguing his decision is not supported by substantial evidence. The Court, however, finds that the ALJ soundly reasoned his decision and based it on substantial evidence in the record. He relied on the reports of orthopedist Drs. Nissanoff and Wieseltier, both of whom opined that Delgado was not limited in standing, walking or sitting. (AR at 16; AR at 194-211.) He also relied on a report by another orthopedist–Dr. Brodie–who said Delgado displayed normal strength in her lower body, could walk on her heels and toes and could feel sensations in all her lower extremities. (AR at 16; AR at 174-180). Even though two medical opinions said that Delgado could frequently lift 20 pounds and could stand for eight hours per eight-hour day, the ALJ gave her the benefit of the doubt and concluded that the record was more consistent with concluding that she could lift 10 pounds frequently and 20 pounds occasionally, and that she could stand and walk for up to six hours in an eight-hour day. (AR at 16.)

/ / /

/ / /

This Court **FINDS** that substantial evidence supports the ALJ's decision because he relied on relevant, documented medical evidence that a reasonable person would accept as adequate. This substantial evidence supports the ALJ's finding that Delgado is not totally disabled and that she is not under a "disability" as defined in the SSA.

**Further Development of the Record.**

In SSA cases, "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (citation omitted). The ALJ must fulfill this duty even when the claimant has counsel. *Id.* Where an ALJ rejects a doctor's opinions that are uncontroverted, corroborated and supported by explanations, and the ALJ does not fully develop the record regarding the rejection, the ALJ must provide clear and convincing reasons for the rejection. *Id.* Where there is an ambiguity about a documented, diagnosed illness during the relevant period, the ALJ must develop the record. *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001).

Here, Delgado argues that the ALJ erred because he did not develop the record by ordering an updated consultative examination. She asserts the record reflects she suffered from more severe restrictions than Dr. Nissanoff identified. Specifically, Delgado argues the ALJ should have ordered further development of the record because (1) Dr. Wieseltier noted bilateral knee pain in his workers' compensation evaluation; and (2) Delgado herself testified she had difficulty walking, standing and sitting, and that *Battles v. Shalala*, 36 F.3d 43, 44-45 (8th Cir. 1994) requires an ALJ to further develop the record if the ALJ doubts a claimant's assertion that his or her condition has deteriorated.

The Court finds no merit in these arguments. First, Dr. Wieseltier reported that the only objective factors of Delgado's disability were in the right shoulder, she did not have a specific injury to her knees, she did not have any tenderness and she did not describe any symptoms of locking or giving way. (AR at 206-207.) He concluded that Delgado should only be restricted from repetitive overhead work and forceful pushing or pulling activities, and that she was capable of performing her usual and customary duties. (AR at 208.) Any notation Dr. Wieseltier made about bilateral knee pain did not affect his assessment that Delgado retained the residual functional capacity to perform her usual and customary duties, except for repetitive overhead work and forceful pushing or pulling.

Second, the record did not indicate any ambiguity about a documented, diagnosed illness. The only potential ambiguity came from Delgado's testimony at the hearing, which the ALJ provided clear and convincing reasons for rejecting. Specifically, he found Delgado's allegations that she could not work at the residual functional capacity were not totally credible because (1) the analyses in the record indicated only nonsevere impairments; (2) the objective medical evidence did not show pathology reasonably likely to produce the disabling symptoms that she alleged; (3) the limits to Delgado's allegedly limited daily activities could not be verified with any reasonable degree of certainty and, even if they were true, had only weak medical evidence to link them to her medical condition as opposed to other factors; (4) doctors did not describe Delgado as being in distress; (5) she did not portray any evidence of pain or discomfort while testifying at the hearing; and (6) none of Delgado's doctors have opined that she is totally and completely disabled from any kind of work. (AR at 17.)

Further, even if *Battles v. Shalala* was binding on this Court, the ALJ did not have a duty here under *Battles* to order another consultative exam. In *Battles*, the claimant initially alleged disability based on physical impairments. 36 F.3d at 44. After the hearing with the ALJ the claimant had a psychological evaluation. *Id.* On review at the district court the claimant, based on the psychologist's report, moved to remand because he alleged he was disabled by both physical and mental impairments. *Id.* The court found that had the ALJ fully and fairly developed the record he would have learned about claimant's mental impairments. *Id.* at 45. *Battles* is inapposite to this matter. Here, Delgado did not change her allegations; she only testified that her condition had deteriorated. No doctor reports supported her testimony. Finally, Dr. Nissanoff's consultative examination occurred ten months after Delgado's initially-alleged onset of disability–February 8, 2004–and only five months before her amended disability onset date. Dr. Nissanoff's opinion, and the other medical reports in the record, support a finding that Delgado retained the residual functional capacity to perform work. (AR at 159.)

This Court **FINDS** that there was no documented ambiguity in the record that triggered the ALJ's duty to further develop the record. Even if Delgado's own testimony could be considered a documented ambiguity, the ALJ provided clear and convincing reasons for rejecting Delgado's testimony.

/ / /

## **C**ONCLUSION

Based on the preceding discussion, this Court concludes that the ALJ's denial of benefits is supported by substantial evidence and is free of legal error. Therefore, the Court **RECOMMENDS** that Plaintiff's motion for reversal and/or remand [Doc. No. 13] be **DENIED** and that Defendant's cross motion for summary judgment [Doc. No. 15] be **GRANTED**.

This Report and Recommendation is submitted to the United States district judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before *__August 3, 2007__*. The document should be captioned "Objections to Report and Recommendation." Any response to the objections shall be filed and served on or before *__August 17, 2007__*. Failure to file objections within the specified time may affect the scope of review on appeal. *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: July 3, 2007

_____
Hon. Nita L. Stormes
U.S. Magistrate Judge